# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON A. ELLIOTT,<br><br>          Plaintiff,<br><br>     v.<br><br>FRANK T. ELLIOTT, III, et al.,<br><br>          Defendants. | Case No.  1:21-cv-00897-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL<br><br>(ECF Nos. 30, 33, 34) |

## I.

## INTRODUCTION

Currently pending before the Court is Plaintiff Aaron A. Elliot's ("Plaintiff") motion to disqualify Quall Cardot, LLP ("Quall"), as counsel for Defendants Frank T. Elliott, III ("Tokkie" or "Trustee"), Wileman Bros. & Elliott Inc. ("WBE"), and Brian Johnson ("Johnson").[1]  The Court, having reviewed the motion, opposition, and reply papers, the declarations and exhibits attached thereto, as well as the Court's file, shall deny the motion for the reasons explained herein.

/ / /

/ / /

---

[1]  For ease of reference to the docket and filings in this action, while the parties utilize the terms petition, petitioner, and respondents, the Court shall refer to the parties as Plaintiff and Defendants, and the operative petition as the first amended complaint.

## II.

## BACKGROUND

On March 26, 2021, Plaintiff instituted this action by filing a petition for accounting and other claims, in the Superior Court of California, County of Tulare.  (ECF No. 1 at 8.)   The petition brought claims for: (1) Petition for Accounting: (2) Petition to Remove Trustee; (3) Petition for Surcharge; (4) Return of Trust Property and Damages; (5) Aiding and Abetting Fiduciary Breaches and for Return of Wrongful Withholding of Trust Property; (6) Violation of the Perishable Agricultural Commodities Act of 1930 ("PACA"), and the California Food and Agriculture Code; and (7) Conversion.  (Id.)  On June 4, 2021, Defendants removed this action to this Court, the United States District Court for the Eastern District of California.  (ECF No. 1.)

Plaintiff's sole federal claim in the originally filed complaint was an alleged violation of the PACA.  (ECF No. 1 at 8-29.)  On June 14, 2021, Defendants filed a motion to dismiss, along with an answer and counterclaim.  (ECF Nos. 6, 7.)  The counterclaim proffers jurisdiction based on the PACA claim.  (ECF No. 7.)  On June 18, 2021, Plaintiff filed a first amended complaint which retained all the same claims as the original complaint except for the PACA claim.  (ECF No. 9.)  On June 28, 2021, Plaintiff filed a motion to remand based on the absence of the PACA claim.  (ECF No. 10.)   On July 9, 2021, Defendants filed an answer to the first amended complaint, and on July 14, 2021, Plaintiff/Counter-Defendant filed an answer to the counterclaim.  (ECF Nos. 17, 18.)  On July 23, 2021, the case was reassigned to the undersigned pursuant to the parties' consent.  (ECF No. 22.)   On August 25, 2021, the Court denied Defendants' motion to dismiss as moot and withdrew the motion to remand pursuant to the notice of withdrawal.  (ECF No. 25.)  On October 1, 2021, the scheduling order issued in this action.  (ECF No. 29.)

On October 6, 2021, Plaintiff filed the motion to disqualify counsel that is presently before the Court, setting the hearing for November 10, 2021.  (ECF No. 30.)  On October 27, 2021, Defendants filed an opposition to the motion.  (ECF No. 33.)  On November 3, 2021, Plaintiff filed a reply brief.  (ECF No. 34.)  On November 8, 2021, finding the matter suitable for decision without oral argument pursuant to Local Rule 230(g), the Court vacated the November

1  10, 2021 hearing on this motion.  (ECF No. 35.)

## III.

## LEGAL STANDARD

Motions to disqualify counsel are decided under state law.  In re Cnty. of L.A., 223 F.3d 990, 995 (9th Cir. 2000); Hitachi, Ltd v. Tatung Co., 419 F.Supp.2d 1158, 1160 (N.D. Cal. 2006).  The local rules for this district direct the Court to apply the rules and law of professional conduct of California.  See Local Rule 180(e) ("[T]he standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and court decisions applicable thereto . . . are hereby adopted as standards of professional conduct in this Court."); Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009) ("By virtue of the district court's local rules, California law controls whether an ethical violation occurred.").

The decision to grant a motion to disqualify counsel due to a conflict of interest is within the trial court's discretion.  Lennar Mare Island, LLC v. Steadfast Ins. Co., 105 F. Supp. 3d 1100, 1108 (E.D. Cal. 2015).  "Under California law the starting point for deciding a motion to disqualify counsel is the recognition of interests implicated by a motion."  Hitachi, 419 F.Supp.2d at 1160.  Disqualification motions involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, and the financial burden on a client to replace disqualified counsel.  Id. at 1161 (citing People ex rel. Department of Corporations v. SpeeDee Oil Change Systems, Inc., 20 Cal.4th 1135, 1145 (1999); Lennar Mare Island, 105 F. Supp. 3d at 1108 (stating court must weigh same factors, as well as "any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.") (quoting In re Lee G., 1 Cal.App.4th 17, 26 (1991)).

"Disqualification is a blunt tool meant to encourage wide berth of ethical grey areas, its ruthlessness warranted only after a clear showing of conflict."  Lennar Mare Island, 105 F. Supp. 3d at 1107.  Because "disqualification is a drastic measure, it is generally disfavored and should

only be imposed when absolutely necessary."  Id. (quoting Concat LP v. Unilever, PLC, 350 F.Supp.2d 796, 814 (N.D. Cal.2004).  "On the other hand, particularly when a party alleges a conflict between two of a firm's current clients, 'the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar. Consequently, the recognizably important right to choose one's counsel must yield to the ethical considerations that embody the moral principles of our judicial process.' "  Id. at 1108 (quoting State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co., 72 Cal.App.4th 1422, 1428 (1999)).

California law distinguishes two types of conflict: a successive conflict of interest involves a conflict of interests between a current client and a former client, whereas a concurrent conflict places the interests of two current clients at odds.  Lennar Mare Island, 105 F. Supp. 3d at 1108 (citations omitted).  Where successive, the primary concern is that of confidentiality.  Id. Where concurrent, the primary concern is the attorney's duty, and the client's legitimate expectation, of loyalty.  Id.  Nonetheless, both duties apply in both types of cases.  Id.  However, different standards govern the two types of conflicts.  If successive, the court determines whether the representations are substantially related, and if so, "an attorney's access to adverse confidential information is presumed and he or she must be disqualified."  Id.

"The rule against concurrent conflicts is less forgiving [and an] attorney will be automatically disqualified from simultaneously representing two clients with adverse interests without both clients' informed, written consent, even if the two matters have nothing in common."  Id. (citations omitted).  "It is immaterial whether the lawyer possesses confidential information that could be misused to the prejudice of either client."  Id. (quoting Cal. W. Nurseries, Inc. v. Superior Court, 129 Cal.App.4th 1170, 1175 (2005)).  The Lennar Mare Island court further distinguishes between successive and concurrent conflicts:

> A client who learns that his or her lawyer is also representing a litigation adversary, even with respect to a matter *wholly unrelated* to the one for which counsel was retained, cannot long be expected to sustain the level of confidence and trust in counsel that is one of the foundations of the professional relationship. All legal technicalities aside, few if any clients would be willing to suffer the prospect of their attorney continuing to represent them under such circumstances.

*Flatt,* 9 Cal.4th at 285, 36 Cal.Rptr.2d 537, 885 P.2d 950 (emphasis in original). "Ethical walls" or "screens," which may prevent a conflict of interest from arising in a successive representation, "do nothing to mitigate conflict arising from concurrent adverse client relationships, since the purpose of the prohibition against such relationships is to preserve the attorney's duty of loyalty, not confidentiality, to his client." *Concat,* 350 F.Supp.2d at 822.

Lennar Mare Island, 105 F. Supp. 3d at 1109.

The California Rules of Professional Conduct ("CRPC") provide the following guidance for where clients with potential or actual conflicting interest may provide informed written consent to concurrent representation in the same matter and counsel may properly continue representation, and where such representation would be forbidden even with informed written consent:

Rule 1.7. Conflict of Interest: Current Clients

(a) A lawyer shall not, without informed written consent[*] from each client and compliance with paragraph (d), represent a client if the representation is directly adverse to another client in the same or a separate matter.

(b) A lawyer shall not, without informed written consent* from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with another client, a former client or a third person,* or by the lawyer's own interests.

(c) Even when a significant risk requiring a lawyer to comply with paragraph (b) is not present, a lawyer shall not represent a client without written* disclosure of the relationship to the client and compliance with paragraph (d) where:

(1) the lawyer has, or knows* that another lawyer in the lawyer's firm* has, a legal, business, financial, professional, or personal relationship with or responsibility to a party or witness in the same matter; or

(2) the lawyer knows* or reasonably should know* that another party's lawyer is a spouse, parent, child, or sibling of the lawyer, lives with the lawyer, is a client of the lawyer or another lawyer in the lawyer's firm,* or has an intimate personal relationship with the lawyer.

(d) Representation is permitted under this rule only if the lawyer complies with paragraphs (a), (b), and (c), and:

(1) the lawyer reasonably believes* that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law; and

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal.

(e) For purposes of this rule, "matter" includes any judicial or other proceeding, application, request for a ruling or other determination, contract, transaction, claim, controversy, investigation, charge, accusation, arrest, or other deliberation, decision, or action that is focused on the interests of specific persons,* or a discrete and identifiable class of persons.*

Cal. Rules of Professional Conduct, rule 1.7.

## IV.

## DISCUSSION

### A.    Request for Judicial Notice and Evidentiary Objections

Defendants' request the Court take judicial notice of ten (10) exhibits contained within their Appendix of Evidence ("AOE").  (ECF Nos. 33-3 at 1.)  The ten exhibits contained in the AOE and proffered in the request for judicial notice, are further described and introduced in the declaration of counsel John M. Cardot.  (AOE, ECF No. 33-4 at 1-397; Decl. John M. Cardot Supp. Opp'n Mot. Disqualify ("Cardot Decl."), ECF No. 33-1.)  Exhibits 1-8 are complaints, entries of dismissals, and a responsive pleading, that were filed in the state court actions.  Exhibit 9 is the Farm Management Agreement that was also introduced and attached to Plaintiff's motion as an exhibit, and which the Court discusses throughout this opinion.  Exhibit 10 is the updated written conflict waiver, described and attested to by counsel Cardot, and signed by each of the Defendants as clients.

Plaintiff does not mount a specific objection to the request for judicial notice or the actual exhibits attached, but in reply, has submitted objections to the declaration testimony of counsel Cardot.  The Court addresses such objections below after consideration of the request for judicial notice.

Courts may take judicial notice of "a fact that is not subject to reasonable dispute because

6

1   it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably

2   be questioned."  Fed. R. Evid. 201(b).  Judicial notice may be taken "of court filings and other

3   matters of public record."  Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6

4   (9th Cir. 2006); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  The Court thus

5   finds it may appropriately take judicial notice of exhibits 1-8.

6        Defendants' exhibit 9, the Farm Management Agreement, is attached and described in the

7   Plaintiff's moving papers, and the Court finds it may appropriately take judicial notice of exhibit

8   9 to Defendants' AOE.  See Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101,

9   1114 (C.D. Cal. 2003) ("The court may also take judicial notice of the documents identified in

10  paragraphs d, e, and f, as these are contracts between Pacific Inland Bank and putative class

11  members that provide the foundation for plaintiffs' claims."); Perdue v. Rodney Corp., No.

12  13CV2712-GPC BGS, 2014 WL 3726700, at *3 (S.D. Cal. July 25, 2014) (authenticity not

13  disputed of contracts sought to be noticed); Valley Fruit Orchards, LLC v. Glob. Horizons

14  Manpower, Inc., No. CV-09-3071-RMP, 2010 WL 1286367, at *2 (E.D. Wash. Mar. 26, 2010)

15  ("Defendants have filed a Motion to Take Judicial Notice of the contracts between the parties  . .

16  . The Complaint necessarily relies on the contracts for the breach of contract claims and the

17  Growers did not contest the authenticity of the contracts.").

18       Finally, the Court finds exhibit 10, a copy of the Defendants' written conflict waiver

19  signed by each Defendant, is a document that the Court can accept based on the declaration

20  testimony of Cardot, and the type of filing given it indicates the assent and execution of the

21  waiver by the Defendants, who are Cardot's clients in this action.  Fed. R. Evid. 201(b)(2) ("The

22  court may judicially notice a fact that is not subject to reasonable dispute because it: . . .  can be

23  accurately and readily determined from sources whose accuracy cannot reasonably be

24  questioned."); Fed. R. Evid. 201(c)(2) (The Court: . . . must take judicial notice if a party

25  requests it and the court is supplied with the necessary information.").  Plaintiff has not disputed

26  the authenticity of the document, though does challenge the legal effect of the document, as

27  addressed herein.  See Perdue, 2014 WL 3726700, at *3 (authenticity not disputed).

28       Accordingly, Defendants' request for judicial notice of exhibits 1-10 contained in the

1   AOE (ECF No. 33-3), is GRANTED, and the Court takes judicial notice of exhibits 1-10 (ECF

2   No. 33-4 at 1-397).  Fed. R. Evid. 201(b)(2), (c)(2), (d) ("The court may take judicial notice at

3   any stage of the proceeding.").

4        In reply, Plaintiff objects to the declaration of Cardot.  (ECF No. 34-1.)  Plaintiff submits

5   that the declaration testimony of Cardot is inadmissible in its entirety because it contains very

6   little fact testimony, and what fact testimony is not shown to be within the personal knowledge

7   of the declarant because the declaration consists almost entirely of the declarant's arguments and

8   opinions as to what the cited documents say and their legal effect.  (Id. at 2.)  Plaintiff submits

9   the declaration testimony is inadmissible: as irrelevant under Federal Rules of Evidence ("FRE")

10  401 and 403; as lacking in foundation, United States v. Tanner, 628 F.3d 890, 903 (7th Cir.

11  2010)[2]; as lacking personal knowledge under FRE 602; as inadmissible opinion testimony under

12  FRE 602, 701, 702, 703; and as inadmissible hearsay under FRE 802.  Plaintiff proffers that

13  Cardot is not qualified to testify as to the intent of the Trustor or any other party as to any of the

14  transactions referred to in the declaration, and fails to identify the documents and files from

15  which he sets forth his opinions.  Plaintiff submits that the only admissible testimony in the

16  declaration is the statement that the "true and correct copies" of the documents are attached.

17  (Id.)  Plaintiff proffers that while "counsel's usual practice is to set forth verbatim the declaration

18  testimony objected to, that is unnecessary here because of the wholesale inadmissibility of the

19  Declaration testimony.  However, should the court request, [Plaintiff] will submit tables with the

20  verbatim testimony, detailed page and line references, and specific objections as to that

21  testimony."  (Id. at 3.)

22       The Court may overrule the objections because they are "are boilerplate and devoid of

23  any specific argument or analysis as to why any particular exhibit or assertion in

24  [the] declaration should be excluded."   Krystal Inc. v. China United Transp., Inc., No.

25

26  [2]  The only discussion of foundation in this case cited by Plaintiff is as follows: "To the extent that Tanner argues
    that the firearms lacked sufficient foundation, we again note that no rule of evidence requires a 'foundation' and that

27  all relevant evidence is generally admissible. Collins, 604 F.3d at 488, quoting A.I. Credit Corp. v. Legion Ins.
    Co., 265 F.3d 630, 637–38 (7th Cir.2001). When attorneys and judges refer to a lack of 'foundation,' they generally

28  refer to a link missing in a chain of logic needed to show that the evidence is actually relevant." Tanner, 628 F.3d at
    903.

1   516CV02406RSWLSP, 2017 WL 4339343, at *5 (C.D. Cal. Sept. 26, 2017).  The Court rejects

2   the Plaintiff's proffer that such line-by-line objections are unnecessary here because of the

3   wholesale inadmissibility of the testimony.  The Court does not find any wholesale applicability

4   to the declaration at hand.  While Plaintiff offers to submit a more specific line-by-line objection

5   table to correspond with the declaration, such submission would not alter the Court's ruling

6   regarding the declaration at hand.  The Court is able to review and make a determination without

7   such additional specific objections, though counsel should do so in the future.

8        The Cardot declaration and the exhibits described and utilized therein, are the 10 exhibits

9   that are the subject of the Defendants' request for judicial notice of the AOE.  The Court finds

10  the declaration to be fairly standard in the manner of describing the attached exhibits and the

11  information contained in those exhibits.  In the Court's view, the only portion of the declaration

12  that Plaintiff's wholesale objections would have potential merit to is the portion where Cardot

13  declares that "in or about 2016, it was discovered that [Plaintiff] had embezzled and

14  misappropriated funds and corporate assets of ELC of $811,981.03 for his own personal use."

15  (Cardot Decl. ¶ 5.)  However, even this statement appears to be referencing the claims filed in

16  the "ELC Action" and the eventual settlement of these claims.   (Cardot Decl. ¶¶ 5-9.)

17  Nonetheless, the Court OVERRULES the objection to paragraph 5 as moot, given the statement

18  is irrelevant to the Court's analysis of the instant motion.  See Krystal Inc. v. China United

19  Transp., Inc., No. 516CV02406RSWLSP, 2017 WL 4339343, at *5 (C.D. Cal. Sept. 26, 2017)

20  (overruling objection as moot because the court did not rely on the statement in ruling on the

21  motion).

22       The other portions of the declaration describe the information contained in the attached

23  trust document, describe the state court action filings attached, describe the attached settlement

24  agreement in relation to the claims in the various state actions, and describe the entering into the

25  Farm Management Agreement and the written waiver by counsel's clients.  (Cardot Decl. ¶¶1-4,

26  6-17.)  The Court finds the declaration appropriately references and describes the documents

27  based on the knowledge of Cardot as counsel for Defendants.  The Court does not find the

28  statements in the declaration run afoul of the Federal Rules of Evidence.  The objection may go

9

to weight but not admissibility.

Accordingly, Plaintiff's objections to the declaration testimony of John M. Cardot (ECF Nos. 33-1, 34-1) are OVERRULED.

**B.      Plaintiff's Primary Grounds and Proffered Factual Basis for Motion for Disqualify**

Plaintiff proffers Quall has represented Defendant WBE since at least January of 2019, when a Farm Management Agreement ("FMA"), was executed on January 1, 2019.  (Mem. P.&A. Supp. Mot. Disqualify ("Mot.") at 2, ECF No. 30-1; Decl. Christopher E. Seymour Supp. Mot. Disqualify ("Seymour Decl.") ¶ 2, ECF No. 30-2 at 1; Seymour Decl., Ex. A, ECF No. 30-2 at 6.)[3]  Plaintiff proffers Quall has represented Defendant Tokkie, in Tokkie's capacity as Trustee of the Aaron A. Elliott 2006 Irrevocable Trust ("Trust"), since at least March of 2017. (Mem. 2; Seymour Decl. ¶ 4, Ex. B, ECF No. 30-2 at 18.)[4]  Plaintiff proffers that prior to March of 2021, Tokkie was an owner and director of WBE, and served in other capacities over several years.[5]  (Seymour Decl. ¶ 16-18, Exs. N, O, P, ECF No. 30-2 at 176, 179, 182.)  Thus, Plaintiff submits that since at least January of 2019, Quall has represented Tokkie in his capacity as Trustee while representing a company owned and controlled by Tokkie, i.e. WBE, in transactions between the Trust and WBE, and is now representing Defendants Tokkie, WBE, and WBE principal Defendant Johnson in this action.  (Mem. 2.)

In this action, Plaintiff seeks removal of Tokkie as Trustee of the Trust, as well as other remedies, based on alleged self-dealing in breach of his fiduciary duties to the Trust, and the inherent conflict of interest between Tokkie as principal of WBE, and Tokkie as Trustee of the Trust.  (Mem. 2.)  Plaintiff proffers that while he is not aware of the number of transactions between the Trust and WBE in which Quall represented WBE and/or Tokkie, there are at least

---

[3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

[4]  The Court notes the earliest date on this Civil Notice and Acknowledgment form appears to be April 7, 2017. (ECF No. 30-2 at 19.)

[5]  The Court notes that while a generally correct proffer of being before March of 2021, the relationship between Tokkie and WBE has substantially changed over the past decade, as discussed below.

1    three critical transactions between WBE and the Trust for which Quall represented both the Trust

2    (through Tokkie as Trustee) and WBE, which have encumbered the Trust's property for the

3    benefit of WBE, and by virtue of his interest in WBE, Tokkie, to the detriment of the Trust and

4    Plaintiff.  (Mem. 2.)

5          One transaction occurred in November of 2020, when, as described by Plaintiff, the Trust

6    and WBE entered into a purported loan agreement secured by a deed of trust against the Trust's

7    Jennings Property[6] to "repay" money "loaned" by WBE to the Trust for acquisition of the

8    Jennings Property.  (Mem. 2 (quotation marks utilized in briefing); Seymour Decl., Exs. E, F.)

9    Plaintiff states Tokkie then executed a second deed of trust "essentially turning unsecured

10   grower account debt of the Trust, including expenditures and advances made by and to WBE

11   under the [FMA] between the Trust and WBE, into debt secured by the Trust's primary assets, its

12   farming properties."  (Mem. 3; Seymour Decl., Ex. G.)

13         Plaintiff states that recognizing the conflicting interests of the Trust and WBE, Quall

14   included a provision in the FMA dated January 1, 2019, "purportedly secured by both of the

15   Trust's farming properties under the second deed of trust since November 30, 2020."  (Mem. 3.)

16   The provision provides that:

17         16. **Informed Written Consent and Waiver**. The Parties
         have been, and hereby are, informed that John M. Cardot and Quall
18       Cardot, LLP previously represented, and currently represent the
         Parties and their affiliates in matters involving the Agreement and
19       various related and un-related matters. The Partners intend and
         acknowledge that Mr. Cardot and Quall Cardot LLP will continue
20       to represent the Trust and WBE with respect to drafting this
         Agreement and other matters involving this Agreement. As such,
21       Mr. Cardot and Quall Cardot LLP will be providing legal services
         to multiple parties in the same transaction who have legal and
22       business interests that conflict. Therefore, both the Trust and WBE,
         on behalf of themselves, their principals, and their affiliates,
23       acknowledge and agree that they have been and hereby are
         informed that there exists a conflict of interest between them and
24       both understand that their respective legal and financial interests

---

25   [6]  Plaintiff describes the "Jennings Property" as follows: "The Jennings Property grows citrus farmed, packed and
     sold by WBE for the Trust, transactions that have benefitted WBE, and therefore Tokkie, at the expense of the Trust.
26   The Jennings Property purportedly had been owned by the Trust since 2011, but title was not transferred by WBE to
     the Trust until November 30, 2020, at the time same as the November 2020 agreements and deeds of trust were
27   executed by WBE and Tokkie.  [Between] 2011 to 2019, WBE used the Jennings Property as collateral for a loan
     from Rabobank to WBE (not the Trust), and only after several requests by Petitioner did Tokkie and WBE get the
28   property released from the Rabobank deed of trust in June 2019."  (Mem. 2-3; Seymour Decl. ¶¶ E, F, G, K, J.)

can only be furthered and protected by hiring and consulting with independent legal counsel to advise them with respect to this Agreement and its risks and consequences and to advocate for them. By executing this Agreement, both the Trust and WBE, on behalf of themselves, their principals, and their affiliates, hereby provide their informed written consent to Mr. Cardot and Quall Cardot LLP concurrently representing the Trust and WBE with respect to this Agreement and any other matters. Further, by executing this Agreement, both the Trust and WBE, on behalf of themselves, their principals, and their affiliates, hereby waive any claims of conflict of interest against Mr. Cardot and Quall Cardot LLP by reason of Mr. Cardot and Quall Cardot LLP concurrently representing the Trust and WBE with respect to this Agreement and any other matters.

(Mem. 3; FMA, ECF No. 30-2 at 12-13.)  The Court notes the FMA defines the party "Trust" as Frank T. Elliot, as Trustee of the Aaron A. Elliott 2006 Irrevocable Trust.  (ECF No. 30-2 at 6.) WBE and the Trust are refereed to within as the "Parties."  Id.

Plaintiff argues that, assuming Tokkie had the authority to waive any conflict or claim against Quall on behalf of the Trust "despite his own clear conflict of interest as both trustee of the Trust and principal of WBE, the adverse interests between WBE and the Trust which may have been potential at the time of the FMA certainly have become *actual* conflicts of interest by virtue of Tokkie, WBE and Johnson (who signed the FMA for WBE) being named" Defendants in this action.  (Mem. 4.)  Plaintiff argues that while Quall is not named as a Defendant, Quall participated in the transactions that give rise to Plaintiff's claims, which will at least require counsel from Quall to testify regarding those transactions.  (Mem. 4.)  Plaintiff further argues that Quall may be subject to claims of the Trust for their own breaches in assisting Tokkie in self-dealing transactions that are alleged to have harmed the Trust and Plaintiff.  (Mem. 4-5.)

In sum, Plaintiff submits that any conflict waiver is unenforceable due to Tokkie's conflicts of interest and alleged self-dealing, and Quall cannot effectively represent the interests of the Trust and Tokkie as Trustee, or the Defendants and their interests arising out of the agreements which are the "fruit of Tokkie's self-dealing."  (Mem. 5.)

## C.    Defendants' Primary Factual Proffers and Arguments in Opposition

Plaintiff is the beneficiary of the Trust, and Plaintiff's father, Defendant Tokkie, is the Trustee of the Trust.  (Decl. Frank T. Elliott III Supp. Opp'n Mot. Disqualify ("Elliot Decl.") ¶ 3,

1  ECF No. 33-2.)  Plaintiff and various family members have long done business together.  (Elliott

2  Decl. ¶ 5.)  Plaintiff previously served as President of Elliott Land & Cattle Co. Inc. ("ELC"), a

3  family owned corporation affiliated with WBE through common ownership and management.

4  (Opp'n 6; Elliott Decl. ¶ 6.)

5      Tokkie was originally an owner in both WBE and ELC.  From 1975 until December 31,

6  2012, Tokkie owned 50% of all stock of WBE; Tokkie owned 33% of WBE until March 31,

7  2021; on April 1, 2021, Tokkie was completely divested from WBE following redemption of his

8  stock pursuant to an option agreement dated December 31, 2012, exercised in 2020; and Tokkie

9  ended participation in the active management of WBE in 2012.  (Opp'n 6; Elliott Decl. ¶¶ 6-7.)

10  Thus, Defendants proffer that over the time period of the operative pleading, Tokkie had no

11  management responsibilities over WBE.  Id.

12      Defendants proffer the present action is part of a series of actions involving Plaintiff's

13  "family and his business dealings beginning with [Plaintiff's] embezzlement of over $800,000

14  while he served as President of ELC."  (Opp'n 6.)  ELC filed a civil action against Plaintiff on

15  October 21, 2016, in Tulare County Superior Court, Case No. VCU267345 (the "ELC Action").

16  (Opp'n 6.)   While the ELC Action was pending, Plaintiff filed his original complaint for

17  damages and accounting on April 3, 2017, against Defendant Tokkie, in Tulare County Superior

18  Court, Case No. 269147 (the "First Probate Action").  Defendants proffer that in a full and final

19  settlement of both the ELC Action and the First Probate Action, the parties entered into a

20  voluntary Settlement and Tolling Agreement (the "STA").  (Opp'n 6-7.)  Quall represented

21  Tokkie in the First Probate Action, and the settlement of it and the ELC Action.  (Opp'n 7.)  The

22  terms of the STA prohibited Plaintiff from refiling any claims with respect to the Trust unless

23  and until the settlement amount to be paid by Plaintiff was paid in full, which was not set to take

24  place per the STA until October 20, 2021 (STA §§ 1-2).  (Opp'n 7.)  During the payment period,

25  Defendants state that Plaintiff expressly agreed "that the Trust Lawsuit and any [and] all

26  litigation or claims concerning the Trust (collectively, the 'Trust Claims') shall be stayed in all

27  respects (including all discovery and motion practice) pending the payment of the Settlement

28  Amount," (STA, § 2).  (Opp'n 7.)

Upon execution of the STA, Plaintiff filed a dismissal of the First Probate Action. Defendants proffer that despite the stay under the STA, Plaintiff filed a second action against the Trustee in violation of the STA on August 23, 2018, in Tulare County Superior Court, Case No. 049087 (the "Second Probate Action").  (Opp'n 7.)  After executing the dismissal in the Second Probate Action, "and as admitted by [Plaintiff] in this Motion," the Trust and WBE entered into the FMA dated January 1, 2019.  (Id.)  On January 15, 2021, the Trustee delivered a "Third Report and Accounting of the Trust," and as the Court reproduced above, Paragraph 16 of the FMA contains an informed written consent and waiver of attorney-client conflicts provision. (Opp'n 7-8.)  Thus, Defendants argue that prior to bringing this action, Plaintiff was aware of any alleged conflict between the Defendants, however, neither Plaintiff nor his counsel made any request that counsel recuse nor brought any disqualification motion at that time.  (Opp'n 8; Cardot Decl. ¶ 15.)  Plaintiff filed this action in Tulare Superior Court on March 26, 2021, and afterwards, each Defendant, with full knowledge of Quall's prior representation of the Trustee in prior trust litigation and WBE in multiple suits and transactions, agreed to be jointly represented by Quall and to waive any conflict.  (Opp'n 8.)[7]

While Plaintiff submits that Quall cannot represent both Trustee and WBE, nor Defendant Johnson, because of actual conflicts arising out of Tokkie's former ownership and management of WBE, Defendant contends Plaintiff does not provide any evidence that the transactions between the Trustee and WBE were unfair to Plaintiff or that Tokkie profited from the transactions.  Specifically, Defendants contend that despite Plaintiff pleading that he has received multiple accountings from the Trustee concerning Trust property, Plaintiff has not provided financial documents, loan transactions, or even forensic accounting showing the Trustee's action on behalf of the Trust were not in the best interest of the Trust's property.

Having summarized the parties' respective framing of the principal facts and arguments, the Court now turns to consideration of the more specific lines of arguments by the parties.  The

---

[7]  As discussed below, a separate informed consent was executed by the Defendants after the filing of Plaintiff's motion to disqualify, in addition to the consent formed signed within the FMA by Defendants Tokkie, and WBE through its signatory Johnson.

Court first addresses whether Plaintiff has standing to bring this motion to disqualify.

### D.      Whether Plaintiff has Standing to Bring the Motion to Disqualify

Anticipating a challenge in the moving papers, Plaintiff argues he does not have to be a current or former client of the attorney in question to have standing to bring a motion to disqualify, citing two cases, Meza v. H. Muehlstein & Co., 176 Cal. App. 4th 969, 980–81 (2009); and Kennedy v. Eldridge, 201 Cal. App. 4th 1197, 1204–05 (2011).  (Mem. 5.)  In Meza, the court rejected the argument that defendants did not have standing to challenge the representation because they did not have an attorney-client relationship and could not invoke the attorney-client privilege.   Meza, 176 Cal. App. 4th at 980.  The Court noted attorney-client privilege is not the only ground for a motion to disqualify, that an "attorney may be disqualified for a variety of reasons including the protection of confidential work product of opposing counsel," and found that the "defendants and their respective counsel, clearly had an interest in protecting confidential attorney work product disclosed to Drouet during the time he participated in joint defense efforts."  Id. at 980-81.

In Kennedy, the court noted caselaw "abounds with examples of orders disqualifying counsel that have not been the product of motions by present or former clients."  Kennedy, 201 Cal. App. 4th at 1204.  In addition to citing Meza, the Kennedy court cited People v. Peoples, 51 Cal. App. 4th 1592, 1599 (1997), summarized as "defense attorney with direct familial connections to victim, witnesses and the defendant disqualified on court's own motion"; Woods v. Superior Ct., 149 Cal. App. 3d 931, 937 (Ct. App. 1983), summarized as "in a divorce action, court properly granted wife's motion to disqualify counsel for husband who had formerly represented the family business"; and DCH Health Servs. Corp. v. Waite, 95 Cal. App. 4th 829, 832 (2002), for its statement that "[s]tanding arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed." Kennedy, 201 Cal. App. 4th at 1204–05.  The DCH court provided an example that a lawyer may be disqualified after improper contacts with an opposing party's expert witness.  DCH Health Servs., 95 Cal. App. 4th at 832.  The Kennedy court stated that "[i]t makes no sense for a court to stand idly by and permit conflicted counsel to participate in a case merely because neither a

1   client nor former client has brought a motion," and thus "conclude[d] that where an attorney's

2   continued representation threatens an opposing litigant with cognizable injury or would

3   undermine the integrity of the judicial process, the trial court may grant a motion for

4   disqualification, regardless of whether a motion is brought by a present or former client of

5   recused counsel." 201 Cal. App. 4th at 1204–05.

6       In opposition, Defendants argue Plaintiff lacks standing under both federal and California

7   state law to bring a disqualification motion. (Opp'n 10.)[8] Defendants request the Court apply

8   the "majority rule" that confers only former and current clients standing to move for

9   disqualification. (Opp'n 10.)

10      "A 'standing' requirement is implicit in disqualification motions." Great Lakes Constr.,

11  Inc. v. Burman, 186 Cal. App. 4th 1347, 1356 (2010). "Generally, before the disqualification of

12  an attorney is proper, the complaining party must have or must have had an attorney-client

13  relationship with that attorney." Id. "The majority view is that only a current or former client of

14  an attorney has standing to complain of that attorney's representation of interests adverse to that

15  current or former client." Colyer v. Smith, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999). As

16  discussed by numerous district courts, the line of reasoning derives support from a Fifth Circuit

17  opinion:

18

---

19  [8]  The Court presumes California law is applicable to whether Plaintiff has standing to bring a motion to disqualify.

20  In re Cnty. of L.A., 223 F.3d at 995 (motions to disqualify counsel are decided under state law). However, at least one court has noted that federal standing requirements govern: "Although Rutti asserts a violation of California state ethical rules, the Court refers to federal authority in assessing the standing requirement because this issue must be

21  resolved under federal law." Rutti v. Lojack Corp., Inc., No. SACV060350DOCRNBX, 2007 WL 9703177, at *3 (C.D. Cal. July 23, 2007) (citing Fiedler v. Clark, 714 F.2d 77 (9th Cir. 1983) ("However extensive their power to

22  create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction."). The FMA, which contains the initial informed consent waiver, does expressly state that the agreement is to

23  "construed and enforced under the laws of the State of California." (ECF No. 30-2 at 13.) In either regard, the Court finds Plaintiff would lack standing under either standard, with California law apparently being more lenient.

24  The Court notes that California courts of appeal have adopted and utilized the standing discussion from Colyer v. Smith, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999), while also affirming California applies a strict standing

25  requirement to motions to disqualify counsel: "Great Lakes read Colyer as recogniz[ing] a minority view inasmuch as it permits a non-client to move to disqualify opposing counsel . . . However, its minority view does not alter well

26  established standing requirements because the non-client must meet stringent standing requirements, that is, harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical . . . Great Lakes also

27  agreed with Colyer that imposing a standing requirement for attorney disqualification motions protects against the strategic exploitation of the rules of ethics and guards against improper use of disqualification as a litigation tactic."

28  Moreci v. Scaffold Sols., Inc., No. A161193, 2021 WL 4843884, at *4 (Cal. Ct. App. Sept. 27, 2021) (citations and quotation marks omitted) (alteration in original).

> To allow an unauthorized surrogate to champion the rights of the former client would allow that surrogate to use the conflict rules for his own purposes where a genuine conflict might not really exist. It would place in the hands of the unauthorized surrogate powerful presumptions which are inappropriate in his hands. Courts do not generally examine the motives of a moving party in a disqualification motion. Once the preliminary showing is made by the former client, the motion must be granted regardless of whether the former client gains an advantage at the expense of his adversary. [citation] We are reluctant to extend this where the party receiving such an advantage has no right of his own which is invaded.

In re Yarn Processing Pat. Validity Litig., 530 F.2d 83, 90 (5th Cir. 1976); see Rutti, 2007 WL 9703177, at *2-3 ("A majority of federal circuit courts, including the Ninth Circuit, have embraced this reasoning.") (citing Kasza v. Browner, 133 F.3d 1159, 1171 (9th Cir. 1998). In Kasza, the Ninth Circuit cited to the Fifth and Second Circuit for the general rule that courts do not disqualify an attorney on grounds of conflict of interest unless the former client moves for disqualification, but ultimately did not make a holding based on standing: "We have difficulty seeing how Frost has standing to complain about a possible conflict of interest arising out of common representation of defendants in different civil actions, having nothing to do with her own representation . . . [t]he government, however, does not press the point . . . even assuming that Frost does have standing, we see no basis for disqualification." Kasza, 133 F.3d at 1171.

The majority rule has been adopted within this district. See Andrews Farms v. Calcot, LTD., No. CV-F-07-0464LJOSKO, 2010 WL 4010146, at *2 (E.D. Cal. Oct. 13, 2010) ("This District follows the . . . majority rule . . . a nonclient, such as Eadie, lacks standing to disqualify counsel."); Simonca v. Mukasey, No. CIVS081453FCDGGH, 2008 WL 5113757, at *3 (E.D. Cal. Nov. 25, 2008) ("As to standing, as a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless a former or current client moves for disqualification . . . Although the Ninth Circuit has not squarely addressed whether a non-client may raise an objection to opposing counsel, the court in *Colyer* adopted the majority rule that allows only former and current clients standing to seek to disqualify opposing counsel . . . [s]everal California district courts have followed *Colyer* . . . This court finds *Colyer* and these subsequent Northern District cases persuasive and applies the majority rule to this case."); see also

1  Maeshack v. Avenal State Prison, No. 1:06-CV00011AWIGSAPC, 2010 WL 582044, at *1

2  (E.D. Cal. Feb. 11, 2010) ("Generally, 'courts do not disqualify an attorney on the grounds of

3  conflict of interest unless the former client moves for disqualification.' ") (quoting Kasza, 133

4  F.3d at 1171).

5  However, "no California case has held that only a client or former client may bring a

6  disqualification motion," because "[a] trial court's authority to disqualify an attorney derives

7  from the power inherent in every court [t]o control in furtherance of justice, the conduct of its

8  ministerial officers, and of all other persons in any manner connected with a judicial proceeding

9  before it, in every matter pertaining thereto." Diller v. Safier, No. A157698, 2020 WL 5554470,

10  at *6–7 (Cal. Ct. App. Sept. 17, 2020) (quoting Kennedy, 201 Cal.App.4th at 1204) (internal

11  quotation marks omitted) (second alteration in original).  The minority view or exception to the

12  general rule, appears to track the principles discussed in Kennedy, 201 Cal.App.4th at 1204.  The

13  Colyer court incorporated an exception to the strict general rule, that "allows a third party

14  standing to object if the litigation will be so infected by the presence of opposing counsel so as to

15  impact the moving party's interest in a just and lawful determination of its claims." Canatella v.

16  Stovitz, No. C 00-01105 JSW, 2004 WL 2648284, at *2 (N.D. Cal. Sept. 13, 2004) ("In a case

17  where the ethical breach is so severe, manifest and glaring that it 'obstructs the orderly

18  administration of justice,' the party who finds his claims so obstructed has standing to request

19  disqualification.") (quoting Colyer, 50 F.Supp.2d at 971-72); Andrews Farms, 2010 WL

20  4010146, at *2 (noting same standards for exception to general rule).

21  The exception appears to be invoked in cases, for example, where facts established the

22  movant had a personal stake beyond a general interest in the fair administration of justice, such

23  as duty to protect confidential information of the movant, even absent an attorney-client

24  relationship.  See S.E.C. v. King Chuen Tang, 831 F. Supp. 2d 1130, 1143 (N.D. Cal. 2011)

25  ("For example, in *Decaview,* cited by the SEC, the party seeking disqualification had a personal

26  interest because the counsel whose disqualification was sought had confidential information of

27  the moving party in its possession.  The Court has found no case that is factually on point with

28  this case, where the *only* personal stake offered by the SEC is its interest in the integrity of the

legal system."); <u>Kennedy</u>, 201 Cal. App. 4th at 1204–05 (collecting cases).  In <u>Great Lakes</u>, the California Court of Appeal discussed cases where, absent an attorney-client relationship, challenges were allowed based on breach of confidentiality or other fiduciary relationships, building its discussion off of <u>DCH</u>, 95 Cal.App.4th 829:

> Neither Hampton nor designers have or had an attorney-client relationship with Graham.

> [*DCH*], held that absent an attorney-client relationship, the moving party must have an expectation of confidentiality. For purposes of a disqualification motion, "[s]tanding arises from a breach of the duty of confidentiality owed to the complaining party, regardless of whether a lawyer-client relationship existed." (*Id.* at p. 832, 115 Cal.Rptr.2d 847.) Thus, some sort of confidential or fiduciary relationship must exist or have existed before a party may disqualify an attorney predicated on the actual or potential disclosure of confidential information. (*Dino v. Pelayo, supra,* 145 Cal.App.4th at pp. 352–353, 51 Cal.Rptr.3d 620 [in the absence of attorney-client or other confidential relationship, a party may not disqualify the attorney jointly representing the opposing parties based solely on their agreement to participate in confidential mediation]; see also *County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 658, 271 Cal.Rptr. 698 [attorney may be disqualified from representing a party where the attorney received work product of moving party from an expert previously designated as moving party's expert].) Neither Hampton nor designers have or have had a prior confidential relationship with Graham or have an expectation of confidentiality.

> We reject the designers' argument that Code of Civil Procedure section 128, subdivision (a)(5), permits a court to dispense with standing requirements when evaluating attorney disqualification motions. (Code Civ. Proc., § 128, subd. (a)(5); see also *SpeeDee Oil Change, supra,* 20 Cal.4th at p. 1145, 86 Cal.Rptr.2d 816, 980 P.2d 371.) That statute gives courts authority to grant disqualification motions brought by a party who meets the standing requirements. (See *SpeeDee Oil Change, supra,* at p. 1145, 86 Cal.Rptr.2d 816, 980 P.2d 371.) **Thus, a moving party must have standing, that is, an invasion of a legally cognizable interest, to disqualify an attorney.**

<u>Great Lakes</u>, 186 Cal. App. 4th at 1356–57 (emphasis added).  The <u>Great Lakes</u> court also discussed <u>Colyer</u>, noting the parties at the time had not cited any published California case that adopted the holding of the case.  Given the instant action does not appear to involve a duty of confidentially, but rather the focus of concurrent conflicts (the duty of loyalty), the <u>Great Lakes</u> court's discussion of the duty of loyalty appears relevant.  The court stated:

4. *Colyer Recognizes A Minority View But Restates The Standing Requirements To Disqualify Opposing Counsel*

Hampton and designers ask this Court to adopt and apply the minority rule in *Colyer v. Smith, supra,* 50 F.Supp.2d 966, to permit them to disqualify Graham. They have not cited a published California case that has adopted *Colyer.* Although cited in *DCH Health Services Corp. v. Waite, supra,* 95 Cal.App.4th at page 832, 115 Cal.Rptr.2d 847, the Court of Appeal did not discuss or adopt the *Colyer* minority rule. (*Ibid.*) As noted, *DCH Health Services* addressed the question of whether a party with an expectation of confidentiality outside the attorney-client relationship has standing to move to disqualify opposing counsel. (*Id.* at pp. 832–833, 115 Cal.Rptr.2d 847.) Our focus is not on the potential disclosure of confidential information, but the potential for a breach of the duty of loyalty. **While *Colyer* also addressed the duty of loyalty, its minority view does not alter well-established standing requirements.**

*Colyer v. Smith, supra,* 50 F.Supp.2d 966, addressed the question of when a party has standing to move to disqualify opposing counsel based on that counsel's breach of its duties of loyalty and confidentiality to a third party. (*Id.* at p. 969.) The majority view is that only a current or former client has standing. (*Ibid.*)

*Colyer,* however, recognized a minority view that a non-client might have standing to bring a disqualification motion. A non-client must establish a "personal stake" in the motion to disqualify opposing counsel that is sufficient to satisfy the standing requirements of Article III of the United States Constitution. (*Colyer v. Smith, supra,* 50 F.Supp.2d at p. 971.) "Generally, only the former or current client will have such a stake in a conflict of interest dispute." (*Ibid.*) But, where the ethical breach is "manifest and glaring" and so "infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of [his or] her claims" (*ibid.*), a non-client might meet the standing requirements to bring a motion to disqualify based upon a third-party conflict of interest or other ethical violation. [citations omitted]

After articulating this view, the *Colyer* court did not invoke the minority rule. (*Colyer v. Smith, supra,* 50 F.Supp.2d at pp. 972–973.) Colyer did not have a personal stake in the duty of loyalty opposing counsel owed to his client and would suffer no harm from any purported breach. (*Id.* at p. 972.) Moreover, the alleged conflict, if it existed, did not "rise to the level where it infects the proceedings and threatens Colyer's individual right to a just determination of his claims." (*Id.* at p. 973.) Therefore, the *Colyer* court denied the motion to disqualify based on lack of standing.

Our reading of *Colyer v. Smith, supra,* 50 F.Supp.2d 966, **recognizes a minority view inasmuch as it permits a non-client to move to disqualify opposing counsel. But the non-client must meet stringent standing requirements, that is, harm arising**

1        **from a legally cognizable interest which is concrete and**
2        **particularized, not hypothetical.** (*Id.* at pp. 971–973.)

3 Great Lakes, 186 Cal. App. 4th at 1357–58 (emphasis added).

4        Defendants argue that for standing in federal court, there must be injury in fact. Simonca, 2008 WL 5113757, at *4 (E.D. Cal. Nov. 25, 2008) ("It is not sufficient that the party moving for disqualification shows that the lawyer's client may be injured by his counsel's continued involvement in the case . . . The moving party must show how the 'diminished quality of the representation' of an opposing party causes the *movant* injury.").[9]   The Court does not find this determinatively different than the standards utilized in California courts for disqualification motions, which have utilized the standards discussed in Colyer. See Great Lakes, 186 Cal. App. 4th at 1358 ("[t]he non-client must meet stringent standing requirements, that is, harm arising from a legally cognizable interest which is concrete and particularized, not hypothetical."); Moreci v. Scaffold Sols., Inc., No. A161193, 2021 WL 4843884, at *5 (Cal. Ct. App. Sept. 27, 2021) (upholding trial court's denial of motion to disqualify brought by nonclient opposing party, as movant "never had an attorney-client relationship . . . and second, even in the absence of such a relationship, under *Colyer*, it failed to show counsel's continued participation would invade 'a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' ") (citations omitted); Est. of Hoult, No. G049302, 2015 WL 4575997, at *10–11 (Cal. Ct. App. July 30, 2015) (same).  Defendants argue Plaintiff has not shown how the representation detrimentally affects Plaintiff's "interests in a just and fair determination of this case," and that Plaintiff has not demonstrated any injury to himself. (Opp'n 11.)  The Court first briefly addresses specific arguments regarding a trustee's duty to bring

---

[9]  Defendants argue that the movant must meet the burden in the moving papers, and cannot make such showing in reply. Simonca, 2008 WL 5113757, at *4 ("Thus, it is defendants['] ultimate burden to show they have standing to raise the issues in their disqualification motion in order for the court to exercise jurisdiction over the motion."). However, in the case cited by Defendants, the movants had not raised arguments regarding standing at all, and the court considered the arguments in any regard. Id.  ("Only in the reply do defendants acknowledge their heavy burden in establishing standing to bring this motion . . . These are new arguments, raised for the first time in the reply, and as such, they may be properly disregarded by the court . . . However, in the court's discretion, it has considered these arguments but finds them insufficient to establish standing.").  The Court finds Plaintiff sufficiently addressed the issue of standing in the moving papers, for the Court to properly consider any arguments made in reply.

1   claims, and issues regarding discovery.

2      1.      Arguments Regarding Duty to Bring Claims and Potential Discovery Issues

3      Defendants argue that Plaintiff's allegations that Tokkie as Trustee has a duty to

4   affirmatively bring claims against WBE, or that Plaintiff will seek discovery from Defendants'

5   counsel, do not demonstrate Plaintiff has standing.  Defendants submit Plaintiff has already taken

6   advantage of the appropriate remedy, which is to bring a claim for breach of trust.  While true

7   that a trustee has a duty to enforce claims that are a part of the trust property, Cal. Prob. Code §

8   16010, Defendants emphasize the remedy is not disqualification of Defendants' counsel, but to

9   bring a claim for breach of trust against the trustee, as provided by Probate Code § 16400.

10     The Court agrees that the appropriate remedy by Plaintiff for any alleged failure by the

11  Trustee Tokkie to bring affirmative claims is an action against the Trustee for violations of the

12  duties owed by Trustee to the beneficiary, under the California Probate Code, which the Plaintiff

13  has done in in bringing this action.  See Cal. Prob. Code § 16010 ("The trustee has a duty to take

14  reasonable steps to enforce claims that are part of the trust property."); Cal. Prob. Code § 16400

15  ("A violation by the trustee of any duty that the trustee owes the beneficiary is a breach of

16  trust."); see also Cal. Prob. Code § 16440 ("If the trustee commits a breach of trust, the trustee is

17  chargeable with" the loss or depreciation in value of the estate, any profit made by the trustee,

18  and any lost profits); Orange Cath. Found. v. Arvizu, 28 Cal. App. 5th 283, 293–94 (2018)

19  ("Consistent with the equitable nature of a beneficiary's remedies, section 16440 gives trial

20  courts wide latitude in deciding whether and what types of damages to impose on a trustee who

21  commits a breach of trust.").

22     As for discovery, Defendants argue Plaintiff is not permitted to seek discovery from

23  Defendants' counsel because any information provided by Defendants is privileged and non-

24  relevant under Federal Rules of Evidence 501 and 502.  Defendants anticipate that in reply,

25  Plaintiff may direct the Court to the California Evidence Code which provides that: "Where two

26  or more clients have retained or consulted a lawyer upon a matter of common interest, none of

27  them, nor the successor in interest of any of them, may claim a privilege under this article as to a

28  communication made in the course of that relationship when such communication is offered in a

1    civil proceeding between one of such clients (or his successor in interest) and another of such

2    clients (or his successor in interest)."  Cal. Evid. Code § 962.  Defendants argue that first,

3    Section 962 does not apply in federal court; and more importantly, the provision only waives a

4    privilege between the clients that share counsel, not those clients and a third-party non-client

5    such as Plaintiff, and thus, even in a California state court, such communications would remain

6    absolutely privileged, and there is no set of circumstances where Plaintiff could obtain discovery

7    from John Cardot, or Quall Cardot.  (Opp'n 12.)

8           In reply, Plaintiff largely argues that Defendants' arguments as to privilege are

9    premature; that non-privileged communications did not become privileged upon the filing of this

10   action; that what is discoverable as to transactions between the Trust and WBE versus what

11   might be subject to privilege must be determined on a request-by-request basis; and issues as to

12   the specific communications are not ripe and irrelevant to determination of this motion.  (Pl.'s

13   Reply to Opp'n Mot. Disqualify ("Reply") 12, ECF No. 34.)

14          The Court agrees in part with both sides.  Communications between Defendants and

15   counsel that may be privileged, would likely remain privileged against Plaintiff (though likely

16   not against each other if any direct claims between Defendants arise), despite any conflict among

17   the Defendants, and as discussed below, the Trustee is the client, not the Trust.  Further, the

18   Court agrees with Plaintiff that any determination of privilege is premature at this juncture, and

19   is not necessary for the Court to adjudicate this motion to disqualify.

20          The Court now turns to the primary considerations underlying standing.

21          2.    Harm to Plaintiff, the Invasion of a Legally Cognizable Interest, and Obstruction
                  to Orderly Administration of Justice
22

23          Defendants argue that even if Plaintiff could show he is harmed by the representation, the

24   degree of harm does not rise to the level of "severe, manifest and glaring," such that it "obstructs

25   the orderly administration of justice."  Rather, Defendants claim that as demonstrated across the

26   three different lawsuits, Plaintiff's claims have been voluntarily dismissed, or as here, orderly

27   litigated, and any conflict has existed since not just the beginning of this action, but since Quall

28   represented both the Trustee and his business interests as far back as the original case, yet

1   tellingly, Plaintiff has not raised the issue until now.  In this regard, Defendants proffer if the

2   harm was really severe, manifest, and glaring, the conflict would have been raised earlier, and

3   thus any alleged harm is insufficient to connote standing.  (Opp'n 12.)  Defendants emphasize

4   the failure to do so by now acts a bar to standing, reiterating that this is the third in a string of

5   cases involving the same or similar parties, transactions, and claims.  (Opp'n 12-13.)  Defendants

6   state that this case has been ongoing with counsel for both sides meeting and conferring over the

7   contents of pleading, thus because disqualification motions are equitable in nature, the delay

8   itself should be grounds to deny.

9        Finally, Defendants argue that any conflict between Tokkie as Trustee, and his status

10  with respect to WBE does not present a material limitation on Quall's representation of both the

11  Trustee and WBE.  Specifically, while Plaintiff argues that Defendant Tokkie had a duty to sue

12  WBE and that his self-interest in WBE prevented him from complying with his duties to the

13  beneficiary, as noted above, Tokkie never had a majority interest in WBE; only had a 33%

14  interest from 2012 to 2021; has not had an active management involvement since 2012; after

15  April of 2021, Tokkie had no remaining ownership interest; and over the time complained of in

16  the operative pleading, had no management responsibilities or control over WBE.  (Opp'n 13.)

17  Therefore, Defendant submits that Plaintiff has failed to present substantial evidence that the

18  transactions between the Trustee and WBE were made in favor of Tokkie or WBE, and to the

19  contrary, given the terms of the transaction as alleged, the terms favored the beneficiary

20  Plaintiff's interest to such an extent, the Trustee believed any suit against WBE would be

21  frivolous and injurious to the Trust.  (Opp'n 13; Elliott Decl. ¶ 8.)

22        As to standing, in reply briefing, Plaintiff does not address the Colyer court's discussion

23  of the general majority rule or that line of caselaw directly, nor responds directly to any of the

24  caselaw cited by Defendants.  (Reply 7-8.)  Plaintiff generally replies that as a sole beneficiary of

25  the Trust, he "is a party in interest" that alleges harm to the Trust, and thus harm through the

26  actions of the conflicted Trustee and WBE, and as counsel for the Trustee, Quall had a duty to

27  Plaintiff "to not assist Tokkie in transactions that were detrimental to the Trust and involved a

28  clear conflict of interest."  (Reply 7.)  Plaintiff then argues the Defendants' Article III standing

1   arguments are without merit because the Defendants appear to require Plaintiff to prove "past
2   tense" harm by the conduct, which Plaintiff argues is incorrect for at least two reasons: (1) it is
3   the Trustee's burden to establish self-dealing did not harm the Trust or its beneficiaries, and (2)
4   there is no requirement for a movant to "prove" harm in a disqualification motion.  (Reply 8.)
5   Plaintiff also avers that Defendants "do not cite any authority that requires a moving party to
6   prove harm as an element of disqualification in the context of unwaivable conflicts."  (Reply 8.)

7        The Court finds Plaintiff's arguments and authority regarding the issue of standing to be
8   unpersuasive and insufficient to demonstrate Plaintiff, as a beneficiary of a trust, has standing in
9   this case to challenge the counsel retained by Tokkie as Trustee of the Trust.  Plaintiff does not
10  cite any further caselaw aside from the two cases provided in the moving papers Meza and
11  Kennedy, discussed above, supra, yet blanketly declares to the Court that "[r]egardless, the
12  standing of a beneficiary to assert a conflict of interest is established under California substantive
13  law."  (Id.)  The Court does not find such principle established under California law within the
14  cases provided by Plaintiff, nor through the Court's own review.  On the other hand, Defendants
15  similarly have not provided clear caselaw establishing that a beneficiary of a trust does not have
16  such standing under the exceptions to the general rule, though the general standards and caselaw
17  discussed herein do appear to weigh toward Defendants' position.

18        The Court rejects Plaintiff's blanket assertion as Plaintiff has not provided any caselaw
19  establishing this contention that the standing of a beneficiary is established in the context of a
20  motion to disqualify.  Indeed, the Court has found cases that demonstrate otherwise.  Rather than
21  establish standing as a *per se* right by relationship between a beneficiary and a trust or trustee
22  (nor conversely that a beneficiary does not have standing in favor of Defendants' position), the
23  limited somewhat analogous cases show that California courts apply the particular facts to the
24  standard any non-client must show to establish standing, i.e., harm arising from a legally
25  cognizable interest which is concrete and particularized, not hypothetical, or an ethical breach
26  demonstrated to be so severe, manifest, and glaring, that it obstructs the orderly administration of
27  justice.  See Est. of Hoult, No. G049302, 2015 WL 4575997, at *9–11 (Cal. Ct. App. July 30,
28  2015) ("Jennifer bore the burden of showing that Counsel's manifest ethical breach infected the

litigation and impacted her interest in a just determination of her claims as a beneficiary and creditor of the Estate . . . Jennifer asserts she has a concrete, particularized, and legally cognizable interest due to her status as 'beneficiary and creditor' of the Estate.  Beyond this assertion, however, she fails to articulate how her interest was *invaded* by Counsel's alleged ethical lapses.") (citations omitted).  The claims by the beneficiary in Est. of Hoult, appear somewhat analogous to the claims here, and the case is instructive in the state court's consideration of both: (1) the legally cognizable interest which is concrete and particularized, not hypothetical standard; and (2) the manifest and glaring ethical violation standard:

> Jennifer argues that, as "both a beneficiary and a creditor of this Estate, [she] holds 'concrete and particularized' rights in this Estate as an 'interested party,' " and "pursuant to *Great Lakes,* ... has third-party standing to move for disqualification to protect her interests as beneficiary and creditor." She also relies on *So,* which stated a nonclient may have standing to move for disqualification when counsel's "ethical violation is so 'manifest and glaring' or 'open and obvious' that it 'confront[s] the court with a plain duty to act.' " (*So, supra,* 2010 U.S. Dist. Lexis 88657, 2010 WL 3075641.) Jennifer asserts Jason (1) served as the Estate's administrator while simultaneously acting adversely to it by allegedly bringing two civil actions against the Estate, and (2) after stepping down as administrator, successively acted against the Estate with his Lexus petition. Jennifer argues Counsel assumed a duty to protect the Estate under *Baker Manock & Jensen v. Superior Court* (2009) 175 Cal.App.4th 1414, 1422–1423 (*Baker* ) and that Counsel "have repeatedly breached this duty and engaged in a course of prohibited simultaneous and successive representation attacking" the Estate. She asserts Counsel were prohibited from representing Jason as an adversary of the Estate, relying on *Baker* and other cases and State Bar Rules of Professional Conduct, rule 3–310(C).
>
> But Jennifer's contention "founders on the threshold question of standing."

Est. of Hoult, No. G049302, 2015 WL 4575997, at *10–11 (Cal. Ct. App. July 30, 2015) (rejecting motion for lack of standing).  The case of Hartman v. Ludlow, is also instructive, wherein:

> Appellants Kathelyn A. Ludlow, Karen M. Almond, and Robert E. Almond (appellants) are the beneficiaries of a trust established by their mother. Respondent Jeffrey A. Hartman is the trustee of the Stone Family Trust (Stone Trust), a separate trust established by their mother and stepfather, both of whom are now deceased. After Hartman filed a request for instructions and certain orders relating

to the Stone Trust in 2014, appellants sought to remove him as trustee. While those matters were pending, appellants sought to disqualify Hartman's attorneys, Michael J. Sundstedt and Lani M. Goodman of Sundstedt & Goodman Law Offices. They argued the attorneys had a conflict of interest based on Sundstedt's brief consultation with their mother regarding a separate matter in 2003.

Hartman v. Ludlow, No. G051380, 2016 WL 3027802, at *1 (Cal. Ct. App. May 19, 2016) (unpublished).  The trial court affirmed that the relevant inquiry is not some form of automatic standing based on the relationship between various beneficiaries of the trusts, but rather based on the threat to judicial integrity or invasion of a legal interest by the alleged breach of ethical standards under Kennedy, 201 Cal.App.4th at 1205, supra, as relied on by Plaintiff in the moving and reply papers.  The Hartman court found the movants lacked standing, and the decision was affirmed:

> Appellants argue this case is similar [to Kennedy where the court found the ethical breach manifest and glaring], but they are wrong. They claim that because Ludlow is the trustee of the Almond Trust and the other appellants are beneficiaries and/or the executor of Judith's estate, they automatically have standing. That is not the relevant inquiry. The relevant inquiry, under *Kennedy*, is whether the attorney's representation threatens "cognizable injury or would undermine the integrity of the judicial process." (*Kennedy, supra*, 201 Cal.App.4th at p. 1205.)

Hartman v. Ludlow, 2016 WL 3027802, at *5.

Further, the Court's review of the treatises collecting cases in this subject area, reveal no clear cases on point, though one source describes an Alabama case where the court denied a beneficiary's challenge, with facts that are analogous to the case at hand:

> The court in Riley v. Bradley, 252 Ala. 282, 41 So. 2d 641 (1948), held that the beneficiaries of a testamentary trust had no right to maintain a suit against an attorney employed by one of the trustees to enjoin the attorney from acting also as attorney for one who purchased part of the shares of stock belonging to the corpus of the trust at public outcry, in the purchaser's suit to compel a transfer of those shares to her, on the ground that the attorney was allegedly representing conflicting interests since there was no privity between the beneficiaries and the attorney.

*Standing of Person, Other than Former Client, to Seek Disqualification of Attorney,* American

1   Law Reports, 72 A.L.R.6th 563 (Originally published in 2012).

2       In the context of a beneficiary to a retirement plan, at least one court has denied a motion

3   to disqualify counsel for an administrator, brought by a beneficiary.  See Almont Ambulatory

4   Surgery Ctr., LLC v. UnitedHealth Grp., Inc., No. CV1402139MWFVBKX, 2014 WL

5   12589658, at *4 (C.D. Cal. June 16, 2014) ("Plaintiffs also argue that they have standing  . . .

6   because they were assigned the plan beneficiaries' benefits . . . premised on the assertion that the

7   plan beneficiaries would  have standing to  bring  this motion to disqualify because  the  Plan

8   Defendants and their counsel owe a duty of loyalty to the beneficiaries . . . However, Plaintiffs

9   have  cited  no  case  law  demonstrating  that  the  plan beneficiaries themselves  would

10  have standing to bring a motion for disqualification.").

11      Based on the above caselaw and applicable standards, as well as the Plaintiff's factual

12  proffers largely reflecting the same allegations underlying this action that the Defendant Tokkie

13  as Trustee engaged in self-dealing in relation with WBE, the Court finds Plaintiff lacks standing

14  to bring a motion to disqualify Defendants' counsel in this case.  Plaintiff as beneficiary is not

15  the client or in privity with counsel Quall.  See Goldberg v. Frye, 217 Cal. App. 3d 1258, 1267

16  (Ct. App. 1990) ("[I]t is well established that the attorney for the administrator of an estate

17  represents the administrator, and not the estate."); Borissoff v. Taylor & Faust, 33 Cal. 4th 523,

18  529 (2004) ("[W]hen a fiduciary hires an attorney for guidance in administering a trust, the

19  fiduciary alone, in his or her capacity as fiduciary, is the attorney's client . . . The trust is not the

20  client.").   Under  the  relevant  standards  for  a  non-client  to  establish  standing  to  disqualify

21  counsel, whether under federal or California law, and the Court's review of the alleged self-

22  dealing acts by Tokkie in relation to Defendant WBE, Plaintiff has not established counsel's

23  continued  representation  of  Defendants  would  invade  a  legally  protected  interest  which  is

24  concrete,  particularized,  and  actual  or  imminent,  not  conjectural  or  hypothetical;  nor

25  demonstrated any ethical breach is so severe, manifest, and glaring, that it obstructs the orderly

26  administration of justice.  See, e.g., Kennedy, 201 Cal. App. 4th at 1204; Moreci, 2021 WL

27  4843884, at *5 (Cal. Ct. App. Sept. 27, 2021); Great Lakes, 186 Cal. App. 4th at 1356–57; Est.

28  of Hoult, 2015 WL 4575997, at *10–11; Andrews Farms, 2010 WL 4010146, at *2.  Even if the

allegations of self-dealing underlying this action are true, Plaintiff has sued both Defendants Tokkie and WBE in this action, and because Tokkie as Trustee is the client of Quall, not Plaintiff, this action will provide the proper potential remedy to Plaintiff's legally protected interests.  Plaintiff has thus not demonstrated the invasion of any such interests and has not demonstrated any ethical breach that would prevent the Court from proceeding to conduct the orderly administration of justice in this action and address the allegations underlying the complaint in this action, and which have been reiterated as a basis for this motion to disqualify.

The Court may deny Plaintiff's motion on such grounds.  See Moreci, 2021 WL 4843884, at *11 ("[L]ack of standing alone is sufficient for the trial court to deny" a motion to disqualify).  Nonetheless, given the less than unambiguous legal standards governing this issue as presented by the parties, the Court considers whether Plaintiff could meet the substantive standards in his motion to disqualify if he were to establish standing.  The Court also examines the substantive law applicable to the conflict given the Court's duty to supervise this litigation and uphold the integrity of the judicial process.  See Almont Ambulatory, 2014 WL 12589658, at *4 (after denying motion to disqualify on basis of standing, proceeding to nonetheless examine whether the conflict precludes joint representation as, in part, being "relevant to the Court's general supervision of this litigation.").  As discussed below, even if the Court found Plaintiff did have standing to bring such a challenge, the Court would deny the motion on additional grounds.

### E. Concurrent Representation under California Law and Whether the Defendants' Informed Written Consent and Waiver of Conflicts is Valid

Plaintiff argues dual representation of interests actually in conflict warrants disqualification of an attorney whose representation of one client is rendered less effective by reason of his representation of another client, citing Castro v. Los Angeles Cty. Bd. of Supervisors, 232 Cal. App. 3d 1432, 1441–42 (Ct. App. 1991); Klemm v. Superior Ct., 75 Cal. App. 3d 893, 898–99, 142 Cal. Rptr. 509 (Ct. App. 1977); Miller v. Alagna, 138 F. Supp. 2d 1252 (C.D. Cal. 2000).  Plaintiff proffers there are at least two general categories of conflicts that cannot be waived: (1) where informed consent cannot be obtained; and (2) situations where even though a lawyer can make an adequate disclosure about the conflicted representation's risks and

1    consequences and the affected clients are willing to provide consent, a client's consent would be

2    deemed ineffective. (Mem. 6-7, citing CRPC 1.7, 1.8.) Plaintiff argues the conflict between

3    Defendant Tokkie as Trustee, and Defendant WBE, is nonwaivable.

4        Defendants frame Plaintiff's motion as asserting an actual conflict of interest exists

5    between the Trustee (Tokkie) and WBE, because Tokkie was a shareholder and executive of

6    WBE, and WBE facilitated certain loan transactions to finance the acquisition and farming

7    operation of a property (the Jennings Ranch). (Opp'n 5.) Defendants argue Plaintiff fails to

8    offer any evidence of wrongdoing on the part of Trustee; fails to offer evidence of harm to

9    Plaintiff; misstates the extent of the Trustee's ownership and control of WBE; and fails to

10   properly recognize the conflict is waivable. (Id.) Defendants emphasize that because this is not

11   the first action in this dispute, but the third suit involving the same claims, Defendants, especially

12   the Trustee, have already spent great sums of money in defending these claims, and there would

13   be tremendous costs in bringing new counsel up to speed on the various matters and underlying

14   transactions and history between the parties. (Opp'n 9.) Defendants argue that given the

15   complained of transactions (mainly the acquisition of B&J and the Jennings' properties), took

16   place long before the first action was filed, and Plaintiff has not until now included Defendants

17   WBE nor Johnson as parties previously, the inclusion of them now is a "transparent tactical

18   maneuver to replace [Defendants' chosen counsel to increase the costs to [Defendants] and place

19   [Defendants] at a disadvantage with new counsel not privy to the multitude of prior actions."

20   (Opp'n 9.) Finally, Defendants argue any conflicts of interest between Defendants and their

21   counsel does not concern Plaintiff because the conflict is waivable and does not prejudice

22   Plaintiff, and Plaintiff should not be allowed to infringe on Defendants' rights to have counsel of

23   their own choosing. (Opp'n 10.)

24       Again, under California ethical rules, counsel may represent conflicted parties under

25   certain circumstances where the parties have given their informed written consent:

26       Rule 1.7. Conflict of Interest: Current Clients

27       (a) A lawyer shall not, without informed written consent* from
         each client and compliance with paragraph (d), represent a client if
28       the representation is directly adverse to another client in the same

30

1    or a separate matter.

2    (b) A lawyer shall not, without informed written consent* from
     each affected client and compliance with paragraph (d), represent a
3    client if there is a significant risk the lawyer's representation of the
     client will be materially limited by the lawyer's responsibilities to
4    or relationships with another client, a former client or a third
     person,* or by the lawyer's own interests.

5
     . . .
6
     (d) Representation is permitted under this rule only if the lawyer
7    complies with paragraphs (a), (b), and (c), and:

8          (1) the lawyer reasonably believes* that the lawyer will be
           able to provide competent and diligent representation to
9          each affected client;

10         (2) the representation is not prohibited by law; and

11         (3) the representation does not involve the assertion of a
           claim by one client against another client represented by
12         the lawyer in the same litigation or other proceeding before
           a tribunal.
13
     (e) For purposes of this rule, "matter" includes any judicial or other
14   proceeding, application, request for a ruling or other determination,
     contract, transaction, claim, controversy, investigation, charge,
15   accusation, arrest, or other deliberation, decision, or action that is
     focused on the interests of specific persons,* or a discrete and
16   identifiable class of persons.*

17   CRPC 1.7.  Thus, "matter" is defined more broadly in subsection (e), than subsection (d)(3),

18   which uses the phrases "assertion of a claim" and "same litigation or other proceeding before a

19   tribunal."  CRPC 1.7(d)(3)-(e).  As relevant here, a conflict is nonwaivable, and representation is

20   not permitted under the express terms of the rule pursuant to subsection d(3), if the

21   representation "involve[s] the assertion of a claim by one client against another client

22   represented by the lawyer in the same litigation or other proceeding before a tribunal."  CRPC

23   1.7(d)(3).  The term "reasonably believes," "when used in reference to a lawyer means that the

24   lawyer believes the matter in question and that the circumstances are such that the belief is

25   reasonable."  CRPC 1.0.1(i).  " 'Reasonable' or 'reasonably' when used in relation to conduct by

26   a lawyer means the conduct of a reasonably prudent and competent lawyer."  CRPC 1.01(h).  "

27   'Belief' or 'believes' means that the person* involved actually supposed the fact in question to

28   be true," and "[a] person's* belief may be inferred from circumstances."  CRPC 1.0.1(a).

Based on the California Rules of Professional Conduct, and given the factual circumstances presented by the parties, the Court finds that if there is informed written consent by the Defendants, the conflict has been properly waived.  Here, Plaintiff as beneficiary, is not in an attorney-client relationship or in privity with Quall.  See Goldberg, 217 Cal. App. 3d at 1267; Borissoff, 33 Cal. 4th at 529.  Defendants WBE, Tokkie, and Johnson, are not asserting a claim against each other in the same litigation or proceeding before this tribunal.  See CRPC 1.7(d)(3).  As the Court finds below, each Defendant has given their informed written consent.  See CRPC 1.7(a)-(b).  The Court finds the representation has not otherwise been shown to be prohibited by law.  See CRPC 1.7(d)(2).

In addition to the express written waiver executed within the FMA, Defendants have submitted an additional document containing a letter from Quall to Defendants, dated October 18, 2021, through which Defendants were again made aware of potential or actual conflicts, and which contains signatures on behalf of each Defendant providing their consent to the joint representation.[10]  The letter explained that there are arguments the Defendants could have directly adverse interests; explained the relevant California Rules of Professional Conduct; advised Defendants that Quall will not give advice to one client in the event any actual conflict of interest develops and that Quall would withdrawal at such time; explained the various ways a future conflict of interest could arise; forewarned the Defendants that each client could not assert the attorney-client privilege against one another; and also contains other cautionary explanations pertaining to the representation.  (ECF No. 33-4 at 392-394.)  Additionally, the letter signed by Defense counsel John Cardot, after citing CRPC 1.7's provision regarding reasonable belief of counsel that they can provide competent and diligent representation to each affected client, states: "In any event, our representation does not involve the assertion of a claim by one client against another client in the same litigation, and Quall Cardot LLP, in my opinion, will be able to provide competent and diligent representation to each affected client."  (Id. at 392-393.)

---

[10]  The Court notes that this provision is signed on behalf of WBE by Frank T. Elliot IV, as sole shareholder and director of WBE, which is presumably another son of Defendant Frank T. Elliot III.  (ECF No. 33-4 at 396.)  The FMA was signed on behalf of WBE by Defendant Johnson acting as President of WBE.  (ECF No. 30-2 at 13.)

Plaintiff replies the October 18 letter, is an attempt by Quall to cure the litigation conflict by getting an additional waiver after the motion to disqualify was filed, arguing such essentially compounds the conflict by representing Tokkie in waiving conflict that favors himself, WBE, Johnson, and Quall, at the expense of the interests of the Trust and Plaintiff.  Plaintiff further submits that "no number of waivers will make the conflict waivable."  (Reply 9 n.1.)

For the reasons explained herein, until there is an actual claim by one Defendant against the other in this same litigation, the Court is not convinced that any potential or existing conflict is nonwaivable under the facts presented.  While it would have been prudent that the additional October 18, 2021 waiver was executed specific to the current lawsuit earlier than after the filing of the motion to disqualify, the FMA agreement expressly states that the Trust and WBE (on behalf of principals and affiliates),[11] provide "informed written consent . . . [to Quall] concurrently representing the Trust and WBE with respect to this Agreement and any other matters . . . [and further] waive any claims of conflict of interest against Mr. Cardot and Quall Cardot LLP by reason of Mr. Cardot and Quall Cardot LLP concurrently representing the Trust and WBE with respect to this Agreement and any other matters."  (FMA, ECF No. 30-2 at 12-13.)  Given the language of the FMA's waiver covering principals of WBE and any matter, and in consideration of the October 18, 2021 waivers, the Court finds the Defendants have provided informed written consent to the concurrent representation in this matter.  See *B. Concurrent Representation of Clients with Conflicting Interests (Conflicts Between Present Clients)*, Cal. Prac. Guide Prof. Resp. Ch. 4-B ("A lawyer asked to represent several clients jointly must examine their interests at the outset, and obtain the informed written consent of each client if it appears that a conflict exists or has a reasonable likelihood of arising during the representation. Moreover, a material change in circumstances (i.e., a conflict develops during the representation) requires the lawyer to *reevaluate* the situation and may require new disclosures and, where applicable, *new* informed written consents from the clients; or if this is not possible, withdrawal

---

[11]  The FMA indicates the waiver by WBE, signed by Defendant Johnson on behalf of WBE, is on behalf of WBE's principals and affiliates.  Plaintiff does not argue this waiver would not cover Defendant Johnson as a principal of WBE, and the Court notes that in the moving papers, Plaintiff expressly states that Quall is representing "WBE principal Brian Johnson."  (Mem. 2.)

1  from the representation.").

2   While Defense counsel does not appear to have submitted any affidavits or declarations

3  directly affirming their reasonable belief in their ability to provide diligent and competent

4  representation, CRPC 1.7(d)(1), which also would have been more prudent to provide the Court

5  in defending this motion, the Court finds, given the stringent standards and disfavor of motions

6  to disqualify, Plaintiff has not demonstrated why such belief would not be reasonable, and the

7  Court can infer from the circumstances and filings, including the letter to counsel's client, that

8  such reasonable belief exists on behalf of Defense counsel.  See CRPC 1.0.1(a) ("A person's*

9  belief may be inferred from circumstances.").  Again, the October 18, 2021 letter affirms

10  counsel's belief that Quall "will be able to provide competent and diligent representation to each

11  affected client." (ECF No. 33-4 at 392-393.)

12   Defendants submit that CRPC 1.7, unlike the predecessor rule, no longer speaks in terms

13  of actual or potential conflicts, but in terms of a material limitation of representation, and even

14  then, permits representation in the face of conflicts with an express written waiver.  (Opp'n 14.)

15  The Court notes the opinions cited by Plaintiff were indeed issued before the California Rules of

16  Professional Conduct were amended.  CRPC 1.7 became effective on November 1, 2018, and the

17  former 1992 version of the rule was effective until October 31, 2018.  See Rules of Professional

18  Conduct    Cross-Reference    Table,    available    at

19  https://www.calbar.ca.gov/Portals/0/documents/rules/Cross-Reference-Chart-Rules-of-

20  Professional-Conduct.pdf (last accessed November 10, 2021).  Defendants accurately contend

21  the modern standard in Rule 1.7 now speaks to direct conflicts and material limitations of

22  representation, and has requirements that are less rigorous than the former, with such conflicts

23  being waivable.  The California Practice Guide affirms the differing approaches:

24   **Approach—former CRPC v. current CRPC:** Under former
 CRPC 3-310(C), actual and potential conflicts were treated

25   similarly—i.e., the ethical obligations owed by counsel in dual
 representation matters that frequently involved at least potential

26   conflicts of interest, were handled substantially the same as if
 an *actual* conflict existed. The current CRPC (eff. 11/1/18) follow

27   the approach adopted by the ABA Model Rules in identifying two
 types of concurrent conflicts: "material limitation" conflicts (¶ 4:28

28   ff.) and "direct adversity" conflicts (¶ 4:29 ff.).

*B. Concurrent Representation of Clients with Conflicting Interests (Conflicts Between Present Clients)*, Cal. Prac. Guide Prof. Resp. Ch. 4-B.  In comparing the provisions, the Practice Guide confirms that "CRPC 1.7 does not preclude an informed written consent to a future conflict that is in compliance with applicable case law. [CRPC 1.7, Comment [9]]."  Id.  CRPC 1.7 allows representation in the face of a material limitation conflict where there is informed written consent:

> 1.  [4:28] **Material Limitation Conflict Requiring Clients' Informed Written Consent:** Without the informed written consent of each client, a lawyer is prohibited from representing a client if there is a "significant risk" the lawyer's representation of the client will be "materially limited" by the lawyer's responsibilities to or relationships with another client, a former client or a third person, or by the lawyer's own interests. [CRPC 1.7(b)]

Id.  The California Practice Guide affirms that under the rule and applicable caselaw, counsel cannot concurrently represent clients during a hearing or trial, where there is an existing actual conflict, even with informed written consent:

> c. [4:78] **Limitation—no representation of conflicting interests at hearing or trial:** Despite the clients' purported "informed written consents," counsel may *not* represent multiple clients at a hearing or trial if there is an existing, actual conflict between (or among) them. In such circumstances, any purported "consent" to the conflicting representation would be "neither intelligent nor informed" as a matter of law. [*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.* (1993) 12 CA4th 74, 97, 15 CR2d 585, 598; see also *Klemm v. Sup.Ct. (County of Fresno)* (1977) 75 CA3d 893, 898, 142 CR 509, 512; *State of Arizona ex rel. Arizona Dept. of Revenue v. Yuen* (2009) 179 CA4th 169, 178, 101 CR3d 525, 532—sister state judgment unenforceable against California defendant whose trial attorney represented other defendants with actual conflicting interests in violation of Arizona ethical rules; Los Angeles County Bar Ass'n Form.Opn. 533 (2020); CRPC 1.7(d)(3)& Comment [8]]
> (1) [4:79] **Rationale:** "[C]ommon sense dictates that it would be unthinkable to permit an attorney to assume a position at a trial or hearing where he could not advocate the interests of one client without adversely injuring those of the other." [*Tsakos Shipping & Trading, S.A. v. Juniper Garden Town Homes, Ltd.*, supra, 12 CA4th at 97, 15 CR2d at 598 (internal quotes omitted)]
> (2) [4:79.1] **Court may refuse waiver:** Where a court justifiably finds a disabling conflict of interest, it may decline to accept the clients' proffered waiver. [*In re A.C.* (2000) 80 CA4th 994, 1002, 96 CR2d 79, 84—sisters formerly involved in juvenile dependency proceedings arising from sexual abuse by their father could not waive conflict created by their father's representation of them as an

attorney in proceedings seeking destruction of their juvenile records]

Id.  Simply bringing Defendants Johnson and WBE into litigation, where before there was only litigation between Plaintiff and Defendant Tokkie in the previous state court actions, does not automatically create a direct adverse conflict between the Defendants in this action that is nonwaivable under CRPC 1.7(d)(3).  The Court is aware, as the comments to the modern rule still acknowledge, "[t]here are some matters in which the conflicts are such that even informed written consent* may not suffice to permit representation."  See Advisory Committee Comment 8, CRPC 1.7(d) (and cases cited therein).  An example of where such written consent was not accepted by the court is In re A.C., where the court rejected a waiver of conflict that would allow an abusive attorney father represent the child:

> Here, accepting the waivers causes so much doubt as to the integrity of the process and appears so overwhelmingly improper, that the court should not have accepted the waivers on behalf of A.C., M.C., and S.C.  To accept the waivers is condoning Richard's continued victimization of his daughters.  The only person who benefits by the destruction of these files is Richard.  The sexual molestation of the girls is not their fault, and they should not feel shame that the courts had to protect them.  Richard, on the other hand, benefits greatly by the eradication of evidence that he molested five daughters and his admission that he did so.  There can be no clearer example of a conflict of interest. Richard's representation of his daughters in seeking to have their files destroyed or redacted strikes at the very integrity of the judicial process. Although we cannot correct what has happened to A.C., M.C., and S.C.'s files, Richard's egregious conflict of interest is sufficient good cause by itself to deny a request for wholesale destruction of Shannon's file.

In re A.C., 80 Cal. App. 4th 994, 1002 (2000).  The Court does not find other circumstances justify declining to accept the Defendant clients' proffered waivers here.  See, e.g., In re A.C., 80 Cal. App. 4th at 1002; Kennedy, 201 Cal. App. 4th at 1202 ("Richard wears several different hats in this controversy.  He is counsel for his son and is litigating against the son's former girlfriend; his law firm once represented the adverse party's father in a family law matter, acquired and utilized a declaration from the adverse party in that matter, and employed the adverse party's stepmother; he is the grandfather of the child whose best interests are at the center of this controversy; the nature and quality of his household (in which the son still resides)

is the subject of an ongoing dispute that will directly affect the court's decisions on shared parenting arrangements; and he is a likely percipient witness in any trial regarding custody.").

Absent direct conflicts or claims against each other among the Defendants in this very action, the Court finds the informed written consent is waivable by informed written consent. Concurrent representation is allowed with informed written consent even where there the representation is directly adverse to another client in the same matter :

> 2. [4:29] **Concurrent Representation of Clients With Directly Adverse Interests Requires Clients' Informed Written Consent:** Without the *informed written consent (¶ 4:13 ff.)* of *each client* (and compliance with CRPC 1.7(d), ¶ 4:78 ff.), a lawyer may not represent a client if the representation is "directly adverse" to another client in the same or a separate matter. [CRPC 1.7(a)]
> A "directly adverse" conflict under CRPC 1.7(a) can arise in a number of ways, for example, when a lawyer:
> • Accepts representation of more than one client in a matter in which the interests of the clients actually conflict; or
> • While representing a client in a matter, accepts in another matter the representation of a person who in the first matter is directly adverse to the lawyer's client; or
> • Accepts representation of a person in a matter in which an opposing party is a client of the lawyer or the lawyer's law firm. [CRPC 1.7, Comment [1]; see *Flatt v. Sup.Ct. (Daniel)* (1994) 9 C4th 275, 284-286, 36 CR2d 537, 542-543 (decided under former rule); *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co., Inc.* (2018) 6 C5th 59, 84, 237 CR3d 424, 442 (decided under former rule); *see also ¶ 4:35*]

*B. Concurrent Representation of Clients with Conflicting Interests (Conflicts Between Present Clients)*, Cal. Prac. Guide Prof. Resp. Ch. 4-B.

The Court now turns to a more pointed review of Plaintiff's arguments. Cited by Plaintiff, Miller explains that a potential conflict of interest exists when "there is a possibility of an actual conflict arising in the future, resulting from developments that have not yet occurred or facts that have not yet become known," and becomes actual if the representation of one client may be rendered less effective by reason of the shared attorney representing the other client." Miller, 138 F. Supp. 2d at 1256 ("California Rule of Professional Conduct Rule 3–310(C)(1) . . . prohibits an attorney from representing multiple clients when those clients have a potential conflict of interest unless the attorney first obtains the informed written consent of the clients."). Castro, emphasizes that consent to conflicted representation with adverse interests at a contested

hearing would not be intelligent or informed, however consent may arise while the conflict is potential:

> Second, plaintiffs cite *Klemm v. Superior Court* (1977) 75 Cal.App.3d 893, 898 [142 Cal.Rptr. 509]: "As a matter of law a purported consent to dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed." *Klemm,* however, went on to say that "... if the conflict is merely potential, there being no existing dispute or contest between the parties represented as to any point in litigation, then with full disclosure to and informed consent of both clients there may be dual representation at a hearing or trial. [Citations.]" (*Id.,* at p. 899.) Besides authorizing consent, *Klemm* does not correspond to a situation in which two or more DCLS attorneys might represent more than one party in a dependency hearing. In *Klemm,* the issue was whether a single attorney could represent both husband and wife in a noncontested dissolution proceeding where both had provided written consent. (*Id.,* at p. 896.)

Castro, 232 Cal. App. 3d at 1441–42.

Plaintiff argues that disqualification is automatic or *per se* where interests conflict and one client's representation is rendered less effective:

> "The courts will protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship. (Ibid.) Therefore, if an attorney-or more likely a law firm-simultaneously represents clients who have conflicting interests, a more stringent per se rule of disqualification applies. With few exceptions, disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other. (Id. at p. 284.)"

People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal. 4th 1135, 1146–47, 980 P.2d 371 (1999) ("The most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation.").  Plaintiff proffers there are at least two general categories of conflicts that cannot be waived: (1) where informed consent cannot be obtained; and (2) situations where even though a lawyer can make an adequate disclosure about the conflicted representation's risks and consequences and the affected clients are willing to provide consent, a client's consent would be deemed ineffective.  (Mem. 6-7, citing CRPC 1.7, 1.8.)

1    As to the first category, Plaintiff argues Tokkie as Trustee is incapable of consenting

2 because his own conflicting interests as Trustee and as a principal of WBE.  Specifically,

3 Plaintiff submits that because the Trust is not bound by self-dealing acts of a Trustee, any

4 attempt by Tokkie to waive any conflict or claim, where the waiver may disadvantage the Trust,

5 is void or voidable at the discretion of an affected beneficiary.  However, in support of the

6 proposition that Tokkie could not provide consent, Plaintiff cites Uzyel which only provides that:

7 "A trustee also is strictly prohibited from engaging in transactions in which the trustee's personal

8 interests may conflict with those of the beneficiaries without the express authorization of either

9 the trust instrument, the court, or the beneficiaries."  Uzyel v. Kadisha, 188 Cal. App. 4th 866,

10 905 (2010).  While this may be true, Plaintiff has provided nothing by way of caselaw in the

11 context of a motion to disqualify brought by a beneficiary of trustee that is moving to disqualify

12 counsel of a trustee.  The purpose of this lawsuit is to allege Tokkie as Trustee has engaged in

13 self-dealing.  Plaintiff has not established that the retention of counsel that concurrently

14 represents WBE is itself engaging in a transaction where Tokkie's personal interests are in

15 conflict with those of the beneficiary.

16    Plaintiff proffers the second category involves situations where a lawyer is prohibited

17 from representing multiple clients even if the lawyer is able to provide adequate disclosure and

18 the clients are capable and willing to consent.  Plaintiff argues these situations have been

19 recognized in California caselaw and statutes, and codified in the Rules of Professional Conduct.

20 Specifically, CRPC 1.8.8(a) provides that a lawyer shall not "[c]ontract with a client

21 prospectively limiting the lawyer's liability to the client for the lawyer's professional

22 malpractice."  As CRPC 1.7(d)(1) requires a reasonable believe by the lawyer they can provide

23 competent and diligent representation, Plaintiff argues a lawyer cannot simply argue honest

24 belief they can provide competent representation to all clients when such belief is not reasonable,

25 Klemm, 75 Cal. App. 3d at 898 ("a purported consent to dual representation of litigants with

26 adverse interests at a contested hearing would be neither intelligent nor informed").  Plaintiff

27 submits the representation in question involves the need for one client to assert a claim against

28 another client represented by the lawyer in the same litigation or proceeding, which under CRPC

1.7(d)(3), is not permitted, even with informed written consent.   (Mem. 8-9.)   Plaintiff emphasizes that the policy at heart underlying this rule is the preservation of the integrity of the judicial system.

The Court finds these arguments unavailing.  Plaintiff has not demonstrated that Defense counsel's belief that it can provide competent and diligent representation would be unreasonable given all of the proffered factual circumstances and legal standards discussed herein.  Nor has Plaintiff demonstrated that this representation involves the need for one Defendant to assert a claim against Defendant in this matter.  Plaintiff argues that as Trustee, Tokkie must only act for the benefit of the trust beneficiaries, and that the duty to protect a trust includes an obligation to litigate claims against third parties.  See Cal. Prob. Code § 16010 ("The trustee has a duty to take reasonable steps to enforce claims that are part of the trust property.")  Plaintiff argues that for Tokkie to discharge this duty would require Tokkie to take positions "adverse to his company, WBE," and thus Quall cannot be loyal to WBE and at the same time, take positions and assert claims against WBE on behalf of Tokkie as Trustee of the Trust.  (Mem. 9.)  Defendants submit that Plaintiff's argument concerning the duty to litigate is based on the mistaken contention that Tokkie as Trustee has an affirmative obligation to initiate legal actions against WBE under Probate Code § 16010, when in fact the provision merely imposes a "duty to take reasonable steps to enforce claims that are part of the trust property."  Cal Prob. Code § 16010.

The Court agrees with Defendants that the Probate Code does not require a trustee to initiate legal claims where there is no reasonable claim against a third party as determined by a trustee.  See Cal. Prob. Code § 16010, Law Revision Comments ("Depending upon the circumstances of the case, it might not be reasonable to enforce a claim in view of the likelihood of recovery and the cost of suit and enforcement.").  Thus, there was no automatic obligation to bring claims against Defendant WBE, but instead Tokkie as Trustee was required to make a reasonable determination within his discretion as Trustee.  Plaintiffs have failed to demonstrate based on the record before the Court that Tokkie as Trustee was required to bring any claims against WBE.  Most importantly in the Court's view as to the differing goals and standards between a motion to disqualify counsel for a trustee brought by a beneficiary and an action

1  between a beneficiary and a Trustee, the Probate Code allows a beneficiary to bring a claim

2  against a trustee for breach of trust for refusing to bring such a reasonable claim, and that is the

3  limits of a beneficiary's recourse, and here the Court cannot infer or determine that Tokkie as

4  Trustee was required to pursue litigation and thus was incapable of providing written consent to

5  joint representation.

6      Plaintiff further submits that Quall's prior representation of Tokkie as Trustee in self-

7  dealing transactions exposes Quall to potential malpractice liability to the Trust and its

8  beneficiary, the Plaintiff.  (Mem. 9-10.)  However, as explained multiple times herein, Tokkie as

9  Trustee is the client, not the Trust or Plaintiff as beneficiary.  Plaintiff has not shown that Quall

10  has attempted to limit its malpractice liability in violation of CRPC 1.88.  Specifically, CRPC

11  1.8.8(a) provides that a lawyer shall not "[c]ontract with a client prospectively limiting the

12  lawyer's liability to the client for the lawyer's professional malpractice."  The Court finds no

13  such provision inherent in the waiver of conflicts between WBE and Tokkie within the FMA or

14  October 18, 2021 letter.

15      Finally, Plaintiff argues that Quall attorneys, especially John Cardot, will be essential

16  witnesses and sources of documents relevant to this case, and it is likely that both Defendants

17  WBE and Johnson, as well as Tokkie as Trustee, will have conflicting interests as to the

18  discoverability and admission of evidence.  That could very well develop into the case, however,

19  this has not been demonstrated yet; there is no discovery dispute before the Court, and as

20  seemingly acknowledged by all parties, the attorney-client privilege would apply to privileged

21  documents, and would not apply between the Defendants if any claims ever arose between them.

22  See Miller, 138 F. Supp. 2d at 1256 ("When 'two or more clients have retained or consulted a

23  lawyer upon a matter of common interest ... neither may claim the privilege in an action by one

24  against the other.' ") (quoting Zador Corp. v. Kwan, 31 Cal.App.4th 1285, 1294 (1995)).  As it

25  stands at this juncture, the Court largely agrees with Defendants that contrary to Plaintiff's

26  contention, Defendants' counsel cannot be made a witness in this case, as again, under principles

27  of probate law, a trust is not itself a legal entity and therefore is not the client.  "[I]t is well

28  established that the attorney for the administrator of an estate represents the administrator, and

1   not the estate." Goldberg v. Frye, 217 Cal. App. 3d 1258, 1267 (Ct. App. 1990); see also

2   Borissoff v. Taylor & Faust, 33 Cal. 4th 523, 529, 93 P.3d 337, 340 (2004) ("[W]hen a fiduciary

3   hires an attorney for guidance in administering a trust, the fiduciary alone, in his or her capacity

4   as fiduciary, is the attorney's client . . . The trust is not the client, because 'a trust is not a person

5   but rather a fiduciary *relationship* with respect to property[,]' [and] [n]either is the beneficiary

6   the client, because fiduciaries and beneficiaries are separate persons with distinct legal

7   interests.").  As the Goldberg court explained:

8           A key element of any action for professional malpractice is the
            establishment of a duty by the professional to the claimant. Absent
9           duty there can be no breach and no negligence. [citations] By
            assuming a duty to the administrator of an estate, an attorney
10          undertakes to perform services which may benefit legatees of the
            estate, but he has no contractual privity with the beneficiaries of
11          the estate.
            It is, of course, conceivable that the attorney for an administrator
12          could undertake to perform legal services at the behest of, and as
            attorney for, a beneficiary of the estate. Under such assumed facts
13          a duty would be created directly in favor of the beneficiary, an
            attorney-client relationship would be established, and the
14          beneficiary would have recourse against the attorney for damages
            resulting from negligent representation. There is no evidence in
15          this case (resorting to the documentation in support of and in
            opposition to the motions for summary judgment, as well as having
16          recourse to the allegations of the first amended complaint),
            however, to support the establishment of an attorney-client
17          relationship by virtue of direct contacts between Frye and
            Goldberg, or any of the other legatees. Therefore, if the legatees
18          are to have grounds for an action for malpractice against Frye,
            they must rely on circumstances and principles, from which a duty
19          may arise *absent* privity of contract, and not based upon an
            attorney-client relationship.
20

21   Goldberg, 217 Cal. App. 3d 1258, 1267–68.  Thus the attorney represents Trustee, and the

22   agreement documents drafted at the direction of the client Tokkie as Trustee, and WBE as client,

23   would be communications between counsel and the clients and potentially privileged.  Fed. R.

24   Evid. 502; Cal. Evid. Code § 954.  While not making any prospective ruling on the applicability

25   of attorney-client privilege to any documents or discovery sought as the issues are not fully

26   briefed or before the Court, in consideration of the motion before the Court, the Court finds these

27   arguments, principles, and caselaw proffered by Defendant provide further support and weigh

28

1    toward denying Plaintiff's motion to disqualify.[12]

2        For all of the above reasons, the Court finds Plaintiff has not demonstrated the conflict to

3    be nonwaivable, and finds Defendants have properly given informed written consent.  Cal. Rules

4    of Professional Conduct, rule 1.7; <u>Lennar Mare Island</u>, 105 F. Supp. 3d at 1108; <u>Klemm</u>, 75 Cal.

5    App. 3d at 898–99.

6        **F.    The Court Declines to Award Attorneys' Fees at this Time**

7        Defendants argue Tokkie as Trustee should be reimbursed out of trust property for the

8    reasonable costs of defending this motion, proffering a civil court sitting in probate exercises

9    broad equitable powers, and may award reasonable and necessary attorneys' fees incurred by a

10   trustee in defending unfounded proceedings brought by a beneficiary in bad faith, with the fees

11   and costs paid via trust property.  <u>See</u> <u>Rudnick v. Rudnick</u>, 179 Cal. App. 4th 1328, 1335 (2009)

12   ("In sum, when a trust beneficiary instigates an unfounded proceeding against the trust in bad

13   faith, a probate court has the equitable power to charge the reasonable and necessary fees

14   incurred by the trustee in opposing the proceeding against that beneficiary's share of the trust

15   estate.").  Defendants further proffer that trustees have the power to pay expenses incurred in the

16   administration of the trust, including power to hire attorneys, both to aid in trust administration

17   and to defend the trust.  <u>See</u> Cal. Prob. Code § 16243 ("The trustee has the power to pay taxes,

18   assessments, reasonable compensation of the trustee and of employees and agents of the trust,

19   and other expenses incurred in the collection, care, administration, and protection of the trust.");

20   <u>Kasperbauer v. Fairfield</u>, 171 Cal. App. 4th 229, 235 (2009) ("Attorneys hired by a trustee to aid

21   in administering the trust are entitled to reasonable fees paid from trust assets.  Preparing the

_____

[12]  Defendants also argue any tort liability suggested by Plaintiff against Defendants' counsel in connection with
legal advice is subject to California's litigation privilege.  Cal. Civ. Code § 47(b) ("A privileged publication or
broadcast is one made: . . . (b) In any (1 . . . judicial proceeding.").   In reply, Plaintiff argues the transactions
between the Trust and WBE are not litigation proceedings to which the privilege would apply, and would not
insulate Quall from having to testify as a witness to such transactions.  (Reply 12.)  The Court largely agrees with
Plaintiff in this ancillary argument, as the transactional documents do not appear to fall within the litigation privilege
intended to protect communications made in court.  <u>See</u> <u>Winters v. Jordan</u>, No. 2:09-CV-00522 JAM, 2011 WL
864479, at *4 (E.D. Cal. Mar. 10, 2011) ("California's litigation privilege, found at California Civil Code § 47(b),
provides, in part, that a publication or broadcast made as part of a judicial proceeding is privileged . . . The
California Supreme Court has given this privilege 'a broad interpretation' in furtherance of the purpose of the
privilege, which is 'to afford litigants and witnesses ... the utmost freedom of access to the courts without fear of
being harassed subsequently by derivative tort actions.' ").

1   accounting and responding to the beneficiaries' objections to that accounting are aspects of trust

2   administration. Therefore, the court did not abuse its discretion in ordering that reasonable

3   attorney fees be paid from trust assets as those fees are incurred.").

4        Given the contentious legal standards and factual issues presented in the parties' briefing,

5   the Court does not find the motion to be completely unfounded.  Thus, at this time the Court

6   declines to award attorneys' fees, however, the Court may entertain a request for fees associated

7   with this motion that is part of a request for fees and costs associated with the entering of

8   judgment in this action.

9                                            **V.**

10                                **CONCLUSION AND ORDER**

11       Plaintiff lacks standing to bring the motion to disqualify as Plaintiff has not established

12  counsel's continued representation of Defendants would invade a legally protected interest which

13  is concrete, particularized, and actual or imminent, not conjectural or hypothetical; nor has

14  Plaintiff demonstrated any ethical breach is so severe, manifest, and glaring, that it obstructs the

15  orderly administration of justice.  See Kennedy, 201 Cal. App. 4th at 1204; Moreci, 2021 WL

16  4843884, at *5; Great Lakes, 186 Cal. App. 4th at 1356–57; Est. of Hoult, 2015 WL 4575997, at

17  *10–11; Andrews Farms, 2010 WL 4010146, at *2.  Further, Defendants have provided their

18  informed written consent and waived any objection to conflicted representation, and Plaintiff has

19  not demonstrated such informed written consent or waiver is invalid under California Rule of

20  Professional Conduct 1.7, nor other applicable law.  For all of the above stated reasons,

21  Plaintiff's motion to disqualify shall be denied.  See Optyl Eyewear Fashion Int'l Corp. v. Style

22  Companies, Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985) (because of the potential for abuse,

23  disqualification motions should be subject to strict judicial scrutiny).

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion to disqualify counsel Quall Cardot LLP (ECF No. 30) is DENIED.

IT IS SO ORDERED.

Dated: __**November 17, 2021**__

UNITED STATES MAGISTRATE JUDGE